**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | | |
|---|---|---|
| **GEORGE R. SZYMANSKI,** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **NO.  2:10-cv-02336-JD** |
| | : | |
| **THOMAS SACCHETTA, GERALD** | : | |
| **BALDINO, JR., and SACCHETTA AND** | : | |
| **BALDINO,** | : | |
| | : | |
| **Defendants.** | : | |

_____

**DuBOIS, J.**                                                                        **January 25, 2012**

<u>**M E M O R A N D U M**</u>

## I. INTRODUCTION

In this action, plaintiff George Szymanski seeks an attorney's fee from defendants Thomas Sacchetta, Gerald Baldino, and the law firm of Sacchetta and Baldino (collectively, "defendants"). Plaintiff, an attorney, alleges that after a client discharged plaintiff, the client's new counsel—defendants—promised plaintiff orally and in writing that they would pay him an attorney's fee for his work on the case but failed to do so. Plaintiff asserts claims for breach of contract and promissory estoppel.

Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Claim for Breach of Contract from Plaintiff's Amended Complaint.[1] For the reasons stated below, the Court denies defendants' motion.

_____

[1] Despite its title, defendants' motion is in fact a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Further, in the motion, defendants ask the Court to find in their favor on plaintiff's promissory estoppel claim in addition to plaintiff's breach of contract claim.

## II. BACKGROUND

On December 10, 1999, Eric Fine entered into a contract with plaintiff's law firm whereby plaintiff agreed to represent Fine in a dental malpractice claim.[2] (Pl.'s Br. Opp'n Defs.' Mot. Summ. J. ("Pl.'s Br.") Ex. A.) Fine and plaintiff agreed that plaintiff would receive forty percent of the amount of Fine's recovery if he prevailed. (Id.) On August 8, 2000, plaintiff filed a complaint on Fine's behalf in the Court of Common Pleas of Philadelphia County against Dr. Mary Anne Checchio, Fine's oral surgeon. Fine v. Checcio, 870 A.2d 850, 855 (Pa. 2005).[3]

Plaintiff worked on Fine's case until March 2002, when Fine discharged him and retained defendants. (Letter from George Szymanski to Eric Fine (March 6, 2002), Mem. Law Supp. Defs.' Mot. Summ. J. ("Defs.' Br.") Ex. D.)  On or about March 11, 2002, plaintiff spoke to Baldino on the telephone and demanded payment of his fee and costs and asked whether he would have to sue Fine to recover. (Dep. of George Szymanski, Defs.' Br. Ex. A ("Szymanski Dep."), at 40.) In response, Baldino said that if plaintiff wanted to be a "partner" of Sacchetta and Baldino in this case, plaintiff would have to refrain from suing Fine and forego payment of his fee and costs until the conclusion of the case. (Pl.'s Certification and Statement of Material Facts ("Pl.'s SOF") ¶ 27; see also Szymanski Dep. 42.) On March 18, 2002, plaintiff sent Sacchetta a letter that, inter alia, stated that plaintiff expected "to receive the majority of the attorney fees in this case." (Letter from George Szymanski to Thomas Sacchetta (March 18,

---

[2] Plaintiff's law firm declared bankruptcy in March 2000; plaintiff continued to represent Fine as a solo practitioner thereafter. Because this case revolves around an alleged agreement between plaintiff and defendants and is not a claim against Fine, this Memorandum will not discuss in detail the relationship between plaintiff and Fine or any events prior to the alleged agreement between plaintiff and defendants.

[3] The caption of the Pennsylvania Supreme Court case incorrectly refers to Checchio as "Checcio."

2002), Defs.' Br. Ex. H.) In this letter, plaintiff also requested a refund of his litigation costs in the amount of $3,322.02. (Id.) On March 21, 2002, in response, Sacchetta wrote to plaintiff, stating "if this matter if [sic] favorably resolved on behalf of Mr. Fine, we will be happy to reimburse your costs and quantum meruit fee." (Letter from Thomas Sacchetta to George Szymanski (March 21, 2002), Defs.' Br. Ex. I.)

The next day, plaintiff wrote to Sacchetta and proposed a specific fee agreement. (Letter from George Szymanski to Thomas Sacchetta (March 22, 2002), Defs.' Br. Ex. J.) In the letter, plaintiff

> propose[d] the following:
>
> 1.    [Defendants] will reimburse [plaintiff] the full amount of [plaintiff's] costs within 7 days, and [plaintiff] will get 60% of the fees if the case is settled before Easter;
>
> 2.    [Defendants] will reimburse [plaintiff] the full amount of [plaintiff's] costs within 7 days, and [plaintiff] will get 40% of the fees if the case is settled before a jury is picked;
>
> 3.    [Defendants] will reimburse [plaintiff] the full amount of [plaintiff's] costs within 7 days, and [plaintiff] will get 20% of the fees if the case is settled before the jury renders a verdict; or
>
> 4.    [Defendants] will reimburse [plaintiff] the full amount of [plaintiff's] fees within 7 days, and [plaintiff] will receive none of the fees if the case is settled after a jury renders a verdict.

(Id.) Defendants did not respond to this letter.

In April 2002, Fine's case went to trial with Sacchetta and Joe H. Tucker, Esq., who is not a party to this litigation, as trial counsel. (Pl.'s SOF ¶ 35.) A jury returned a verdict of $500,000 in Fine's favor on April 26, 2002. (Id. ¶ 36.) On May 2, 2002, plaintiff sent defendants a letter stating, inter alia, that plaintiff was "anticipating a dispute about the fees" and asking

defendants to keep the fee earned from the case in escrow until the resolution of the dispute. (Letter from George Szymanski to Thomas Sacchetta and Gerald Baldino (May 2, 2002), Defs.' Br. Ex. K.)

On July 9, 2002, Tucker sent plaintiff a letter enclosing plaintiff's litigation costs. (Letter from Joe Tucker to George Szymanski (July 9, 2002), Defs.' Br. Ex. L.) The letter stated that plaintiff's "financial involvement in this matter ha[d] ended." (Id.) The letter also informed plaintiff that Dr. Checchio had filed a post-trial motion on the issue of statute of limitations and that if Dr. Checchio prevailed, Tucker would sue plaintiff for malpractice on Fine's behalf. (Id.) Plaintiff responded with a letter to Tucker on August 23, 2002, arguing that plaintiff had "done almost all of the work" in the case and that the July 9, 2002, letter was "a cheap attempt to try to cheat [plaintiff] out of the fees [he] earned in this case." (Letter from George Szymanski to Joe Tucker (Aug. 23, 2002), Defs.' Br. Ex. M.) The letter also stated that the trial court would not grant Dr. Checchio's post-trial motion because the same argument had failed in an earlier summary judgment motion. (Id.) The trial court denied the post-trial motion. Fine, 870 A.2d at 855.

In October 2002, plaintiff had another telephone conversation with Baldino regarding, inter alia, plaintiff's share of the attorney's fee; plaintiff memorialized this conversation in a letter to Baldino. (Letter from George Szymanski to Gerald Baldino (Oct. 28, 2002), Pl.'s Br. Ex. C.) The letter states that Baldino had inquired "about what [plaintiff's] expectations [were] for [his] share of the fees that might be forthcoming from the Eric Fine case." (Id.) Plaintiff stated that he could not estimate his fee at that time because he did not know the extent of the work of defendants and Tucker on the case. (Id.)

On May 22, 2003, the Pennsylvania Superior Court overturned Fine's verdict on statute of limitations grounds. (Letter from Joe Tucker to Michael Meehan (Sept. 3, 2003), Defs.' Br. Ex. N.) Thereafter, Tucker filed a Writ of Summons against plaintiff in the Court of Common Pleas of Philadelphia County on behalf of Fine for malpractice in failing to timely file Fine's complaint. (Pl.'s SOF ¶ 49.) On September 3, 2003—while the malpractice case against plaintiff was pending—Tucker wrote to plaintiff's counsel stating that plaintiff was not entitled to quantum meruit because he committed malpractice. (Letter from Joe Tucker to Michael Meehan (Sept. 3, 2003), Defs.' Br. Ex. N.) On March 30, 2005, the Pennsylvania Supreme Court reversed the Superior Court's decision and reinstated the jury verdict in Fine's case. Fine, 870 A.2d 850. Tucker withdrew the malpractice action against plaintiff some time thereafter. (Pl.'s SOF ¶ 51.)

On May 19, 2006, Baldino received a check from Checchio's counsel for $597,382.99, which included the judgment, costs, and post-judgment interest. (Letter from John Hare to Gerald Baldino (May 16, 2006), Pl.'s Br. Ex. D.) Checchio then filed an interpleader petition on June 12, 2006, in the Court of Common Pleas of Philadelphia County with respect to the fee dispute. (Pl.'s SOF ¶ 53.) On September 20, 2006, the Common Pleas judge ordered plaintiff to file a complaint alleging his entitlement to an attorney's fee, which plaintiff did on October 10, 2006. (Id. ¶¶ 55, 56.) Fine filed a motion for summary judgment on November 8, 2007, seeking a ruling from the court in his favor on plaintiff's claim for an attorney's fee; the court granted Fine's motion on January 11, 2008. Fine v. Checcio, No. 00-315 (Ct. C.P. Phila. Cnty. Apr. 17, 2008) (attached to Pl.'s Br. as Ex. E). The court issued an opinion on April 17, 2008, explaining that plaintiff's complaint against Fine was time-barred because the four-year statute of limitations began to run when the relationship between plaintiff and Fine ended. Id.

On May 19, 2010, plaintiff filed the instant action in this Court.

## III. STANDARD OF REVIEW

In considering a motion for summary judgment, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). The party opposing the motion, however, cannot "rely merely upon bare assertions, conclusory allegations or suspicions" to support its claim. Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). After examining the evidence of record, a court should grant summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

## IV. DISCUSSION

Defendants ask the Court to enter judgment in their favor on both of plaintiff's claims: breach of contract and promissory estoppel. Defendants argue that plaintiff's breach of contract claim fails because plaintiff and defendants did not enter into an enforceable contract. Defendants contend that plaintiff's promissory estoppel claim fails because plaintiff's reliance on defendants' promises was unreasonable and because the interest of justice does not require

6

enforcement of the promise. Finally, defendants argue that the statute of limitations and the doctrine of res judicata bar plaintiff's claims.

### A. Breach of Contract

Plaintiff claims that he and defendants entered into an enforceable contract in which he agreed not to sue Fine for his fee in exchange for a share of the fee if Fine prevailed at trial. Plaintiff argues that he and defendants agreed to the terms of this contract via letters and telephone calls in March 2002.

### 1. Enforceability of Contract

To prove a breach of contract under Pennsylvania law, a plaintiff must establish "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003); see also Lynchburg Steel, Inc. v. O'Neill Props. Grp., L.P., No. 09-4704, 2010 WL 4909941, at *2 (E.D. Pa. Dec. 1, 2010). Defendants argue that plaintiff's breach of contract claim fails because the parties did not enter into an enforceable contract.[4]

The elements of an enforceable contract under Pennsylvania law are: (1) a manifestation of an intent to be bound by the terms of the agreement, (2) sufficiently definite terms, and (3) an agreement supported by adequate consideration. See Johnston the Florist, Inc. v. Tedco Constr. Corp., 657 A.2d 511, 516 (Pa. Super. 1995). Typically, the question of "whether an undisputed

---

[4] Defendants do not contest that, if there was an enforceable contract, they breached it. When deciding defendants' first Motion to Dismiss, this Court held that plaintiff had not sufficiently alleged a breach of a contractual obligation. Szymanski v. Sacchetta, No. 2:10-cv-2336, 2011 WL 382631, at *3 (E.D. Pa. Feb. 7, 2011). Plaintiff has since filed an Amended Complaint in which he alleges that defendants "eventually" breached their agreement by not paying him his fair share of the fee. (Am. Compl. ¶ 16.) The Court concludes that, if an enforceable contract existed between the parties, defendants breached it by failing to pay plaintiff his contracted-for attorney's fee in the case.

set of facts establishes a contract is one of law." Buff v. Fetterolf, 215 A.2d 327, 330 (1965). However, "[w]here the facts are in dispute, the question of whether a contract was formed is for the jury to decide." Ingrassia Constr. Co., Inc. v. Walsh, 486 A.2d 478, 482 (Pa. Super. 1984); see also York Excavating Co., Inc. v. Emp'rs Ins. Of Wausau, 834 F. Supp. 733, 740 (M.D. Pa. 1993) (concluding in context of oral contract that all three elements of contract formation were questions of fact for the jury). Further, "[i]n cases involving contracts wholly or partially composed of oral communications, the precise content of which are not of record, courts must look to surrounding circumstances and course of dealing between the parties in order to ascertain their intent." Boyle v. Steiman, 631 A.2d 1025, 1033 (Pa. Super. 1993); see also Westinghouse Elec. Co. v. Murphy, Inc., 228 A.2d 656, 659 (Pa. 1967).

For the reasons that follow, the Court concludes that genuine issues of material fact exist with respect to the foregoing three elements of contract formation.

### i. First Two Elements: Manifestation of Intent to Be Bound and Definite Terms

Plaintiff alleges that he and defendants entered into an agreement regarding his fee via letters and telephone calls during March 2002. (See Szymanski Dep. 40–42.) "[E]xamin[ing] the evidence of record in the light most favorable to [plaintiff], and resolv[ing] all reasonable inferences in [plaintiff's] favor," Wishkin, 476 F.3d at 184, the Court concludes that this case "involv[es a] contract[] wholly or partially composed of oral communications, the precise content of which are not of record," Boyle, 631 A.2d at 1033. There is a genuine issue of material fact as to the terms of the alleged agreement because the record does not contain sufficient evidence to determine the content of the telephone calls between plaintiff and defendants; rather, the record only contains evidence that the telephone calls took place. A jury is

required to "look to surrounding circumstances and course of dealing between the parties,"
Boyle, 631 A.2d at 1033, and determine the precise terms of the contract, if any, to which
plaintiff and defendants manifested an intent to be bound.[5]

The issue is further complicated, raising genuine issues of material fact, by the March 22,
2002, letter, which can be considered an amplification of what was meant by "quantum meruit"
in the March 21, 2002, letter. Without knowing the precise terms of the alleged oral contract, the
March 22, 2002, letter's true meaning remains unclear, especially given the fact that defendants
did not respond to this letter.[6]

There are also genuine issues of material fact as to the definiteness of the terms of the
contract. Typically, the question whether the terms of a contract are sufficiently definite is a
question of law for the court. See ProtoComm Corp. v. Fluent, Inc., No. 93-518, 1995 WL 3671,
at *14 (E. D. Pa. Jan. 4, 1995) (citing Engstrong v. John Nuveen & Co., 668 F. Supp. 953, 962
(E.D. Pa. 1987)). However, where there is a genuine issue of material fact as to the terms of an
alleged oral contract, a jury is required to determine those terms. See York Excavating, 834 F.

---

[5] Defendants argue that there was no manifestation of an intent to be bound because it is unclear
whether plaintiff was asking for a percentage share of the attorney's fee or quantum meruit,
which would be a fair hourly rate for the time plaintiff spent working on the case. Defendants'
argument misses the point. "In ascertaining the intent of the parties to a contract, it is their
outward and objective manifestations of assent, as opposed to their undisclosed and subjective
intentions, that matter." Ingrassia Constr., 486 A.2d at 483; see also Long v. Brown, 582 A.2d
359, 363 (Pa. Super. 1990). Thus, the fact that "[p]laintiff admitted that he understood quantum
meruit to have at least two different meanings," (Defs.' Br. 18), does not necessarily mean that
there was no manifestation of an intent to be bound.

[6] The Court notes that the March 22, 2002, letter is unclear even when viewed in isolation. The
fourth paragraph states that defendants "will reimburse [plaintiff] the full amount of [his] fees
within 7 days, and [plaintiff] will receive none of the fees if the case is settled after a jury renders
a verdict." (Letter from George Szymanski to Thomas Sacchetta (March 22, 2002), Defs.' Br.
Ex. J.) Unlike the previous three, the fourth paragraph says nothing about costs and appears to
provide for plaintiff's receiving a fee within seven days at the same time as providing for
plaintiff's receiving no fee at all if the case is settled after a jury renders a verdict.

Supp. at 740; <u>Ingrassia Const.</u>, 486 A.2d at 483–84; <u>see also</u>, Pa. SSJI (Civ) § 19.20 ("If you find

that all the items needed to form a contract are present, . . . you must find that [<u>party asserting an</u>

<u>oral contract</u>] has established that both parties intended to be bound by the terms of the

agreement, which were sufficiently definite to be specifically enforced, and there was mutuality

of consideration.").

### ii. Adequate Consideration

Plaintiff alleges that he agreed not to sue Fine for his attorney's fee in exchange for a

promise from defendants to share the fee with him. (<u>See</u> Szymanski Dep. 40–41) "While

forbearance from proceeding with a law suit may constitute good consideration for an agreement,

it must be bargained for and given in exchange for the promise made by the promisor."

<u>Cardamone v. Univ. of Pittsburgh</u>, 384 A.2d 1228, 1232 (Pa. Super. 1978) (internal citations

omitted). If plaintiff did, in fact promise to forego suit against Fine in exchange for defendants'

promise to share the fee, then that would constitute adequate consideration under the third-party

beneficiary doctrine because Fine would be an intended beneficiary of the contract. <u>See</u> <u>Guy v.</u>

<u>Liederbach</u>, 459 A.2d 744, 751 (Pa. 1983) (adopting Restatement (Second) Contracts § 302); <u>cf.</u>

<u>Weavertown Transp. Leasing, Inc. v. Moran</u>, 834 A.2d 1169 (Pa. Super. Ct. 2003) (holding that

no consideration existed where third party was merely "incidental" beneficiary, not "intended"

beneficiary). However, none of the March 2002 letters mention plaintiff's forbearance from suit,

and thus, there is a genuine issue of material fact as to whether plaintiff promised to forego suit

against Fine during one of the March 2002 telephone calls in exchange for defendants' promise

to share the fee with plaintiff.

10

### 2. Statute of Limitations

Defendants argue that, even if the parties entered into an enforceable contract in March 2002, Tucker's July 9, 2002, and September 3, 2003, letters constituted repudiation of the contract and the statute of limitations began to run upon plaintiff's receipt of either letter. Thus, defendants argue, plaintiff's breach of contract claim is time-barred.

The statute of limitations for breach of contract under Pennsylvania law is four years. 42 Pa. Cons. Stat. § 5525(a) (2004). "The statute of limitations begins to run at the time the cause of action accrues. Under Pennsylvania law, in an action for breach of contract, the action accrues when the contract is breached." McCarthy v. Scottsdale Ins. Co., No. 99-978, 1999 WL 672642, at *2 (E.D. Pa. Aug. 16, 1999). Where one party repudiates the contract before the time for performance has arrived, such repudiation does not qualify as a breach that would trigger the running of the statute of limitations unless the other party elects to treat it as a breach. See Simon Wrecking Co. v. AIU Ins. Co., 350 F. Supp. 2d 624, 634–35 (E.D. Pa. 2004). In Total Control, Inc. v. Danaher Corp., 359 F. Supp. 2d 387, 393–94 (E.D. Pa. 2005), the court cited the

> general rule that in cases of anticipatory repudiation, the non-breaching party may either opt to afford the repudiator an opportunity to recant and perform by awaiting performance, in which case the cause of action accrues and the statute of limitation begins to run at the time performance is due, or may elect to place the repudiating party in breach immediately, in which case the accrual date of the cause of action and the triggering of the statute of limitations are accelerated from the time of performance to the date of such election.

In this case, both of Tucker's letters are attempted repudiations. However, plaintiff did nothing to "elect to place the repudiating party in breach immediately." Id. at 394. Thus, the statute of limitations did not begin to run until performance was due. In this case, the earliest date on which defendants could have performed under the contract was May 19, 2006, when they

11

received the check for the judgment, costs, and interest from Checchio's counsel. Plaintiff filed

this action four years later, on May 19, 2010. Thus, this action is timely. See LaRosa v. Cove

Haven, Inc., 840 F. Supp. 319, 320 (M.D. Pa. 1993) ("'In computing the time in which an action

must be brought, in Pennsylvania, the day on which the cause of action arose must be omitted

and the last day of the period is included.'" (quoting Perrine v. Heishman, 253 F. Supp. 68, 69

(M.D. Pa. 1966))).

### 3. Conclusion

The Court concludes that there are genuine issues of material fact as to whether the

parties entered into an enforceable contract. Further, plaintiff's breach of contract claim is not

time-barred. Thus, defendants' motion is denied with respect to plaintiff's breach of contract

claim.

### B. Promissory Estoppel

Under Pennsylvania law, a plaintiff may prevail on a promissory estoppel claim where

"(1) the promisor makes a promise that he reasonably expects to induce action or forbearance by

the promisee, (2) the promise does induce action or forbearance by the promisee, (3) and

injustice can only be avoided by enforcing the promise." Carlson v. Arnot-Ogden Mem'l Hosp.,

918 F.2d 411, 416 (3d Cir. 1990); see also Restatement (Second) of Contracts § 90 (setting forth

elements of promissory estoppel). "Under Pennsylvania law, promissory estoppel is a doctrine

used in the alternative to a breach of contract, and applies only when the standard elements of

contract formation cannot be established." Caring People Alliance v. Educ. Data Sys., Inc., No.

07-1267, 2008 WL 4441994, at *11 (E.D. Pa. Sept. 29, 2008) (citing Crouse v. Cyclops Indus.,

745 A.2d 606, 610 (Pa. 2000)).

Plaintiff argues that the conversations between plaintiff and defendants leading up to and including the March 21, 2002, letter constituted defendants' promise to pay plaintiff his fair share of the attorney's fee. Plaintiff alleges that he reasonably relied on this promise by not filing suit against Fine for quantum meruit until after the statute of limitations for that action had run. Plaintiff further argues that the interest of justice supports enforcement of the promise because he worked for two years on Fine's case and deserves a reasonable fee. Defendants contend that plaintiff's promissory estoppel claim fails because plaintiff's reliance on defendants' promise was unreasonable and because the interest of justice does not require enforcement of the promise.

### 1. Reasonable Reliance

Defendants argue that Mr. Tucker's July 9, 2002, and September 3, 2003, letters informing plaintiff that defendants did not intend to share the fee with him made it unreasonable for plaintiff to rely on defendants' earlier promise. Under Pennsylvania law, the jury determines whether reliance on a promise is reasonable. See Lobolito, Inc. v. North Pocono Sch. Dist., 755 A.2d 1287, 1292 (Pa. 2000). The Court concludes that a jury could find plaintiff's reliance reasonable.

A jury would have no trouble finding that plaintiff's reliance on defendants' promise in March 2002 to pay plaintiff quantum meruit was reasonable. Defendants argue that Tucker's July 9, 2002, letter, in which Tucker stated that "[plaintiff's] financial involvement in this matter ha[d] ended," (Letter from Joe Tucker to George Szymanski (July 9, 2002), Defs.' Br. Ex. L), rendered plaintiff's reliance on the March 2002 promise unreasonable. Defendants' argument is undercut by the fact that plaintiff replied to Tucker's letter with a long argument as to why he was entitled to an attorney's fee, to which plaintiff did not receive a response. Based on this lack

13

of response, a reasonable person might assume that the matter was unsettled at worst. Further, in October 2002, plaintiff spoke with Baldino about sharing the fee from the Fine case, during which time Baldino allegedly did not object to sharing the fee. This conversation could lead a reasonable person to rely on defendants' March 2002 promise to share the fee with plaintiff.

Defendants also argue that Tucker's September 3, 2003, letter to plaintiff's counsel renders plaintiff's reliance unreasonable. In it, Tucker states "[i]ndeed, [plaintiff] is not entitled to a quantum meruit fee because his work in this matter resulted in malpractice." (Letter from Joe Tucker to Michael Meehan (September 3, 2003), Defs.' Br. Ex. N.) First, a jury could find that the fact that Tucker saw a need to state again that plaintiff was not entitled to quantum meruit means that Tucker's July 9, 2002, letter did not clearly repudiate defendants' promise. Second, the September 3, 2003, letter is ambiguous. It states plaintiff was not entitled to an attorney's fee because he committed malpractice. Plaintiff could have reasonably interpreted this statement to mean that defendants would only deny him his fee if the state courts ruled that Fine's claim against Checchio was barred by the statute of limitations. Thus, when the Pennsylvania Supreme Court reinstated Fine's jury verdict and Tucker withdrew the malpractice action against plaintiff, plaintiff could reasonably have assumed that the original promise remained intact.

## 2. Interest of Justice

Plaintiff states that he worked for two years on the Fine case. Defendants reimbursed plaintiff for his costs, but plaintiff has not received any payment for the work he did before Fine discharged him. Plaintiff alleges that he refrained from suing Fine for his fee until the Court of Common Pleas ordered him to do so because he was relying on defendants' promise. By then, plaintiff's claim against Fine was time-barred. If the jury credits plaintiff's allegations, the

14

interest of justice would require defendants to honor their promise and give plaintiff his fair share of the fee he earned during the two years he worked on the Fine case.

Defendants argue that the interest of justice does not require the enforcement of defendants' promise because plaintiff has "failed to act equitably" by refusing to participate fully in the discovery process. (Defs.' Br. 21.) The Court does not see how plaintiff's participation in discovery is relevant to whether the interest of justice supports enforcement of defendants' promise. Finally, defendants argue that plaintiff has failed to provide the documentation necessary to determine the fee he is owed. Again, the Court fails to see the relevance of this discovery dispute to this motion for summary judgment.

### 3. Statute of Limitations

Defendants also argue that plaintiff's promissory estoppel claim is time-barred. The statute of limitations for promissory estoppel is four years. Crouse, 745 A.2d at 611 (holding that the statute of limitations for promissory estoppel is governed by 42 Pa. Cons. Stat. § 5525(a) (2004)). The analysis above with respect to the statute of limitations for plaintiff's breach of contract claim applies with equal force to his promissory estoppel claim. Defendants did not fail to honor their promise to plaintiff until, at the earliest, May 19, 2006. Thus, plaintiff timely filed this action.

### C. Res Judicata

Defendants also argue that plaintiff's claims are barred by the doctrine of res judicata. The Court has already ruled against defendants on this issue, see Szymanski v. Sacchetta, No. 2:10-cv-2336, 2011 WL 382631, at *2–3 (E.D. Pa. Feb. 7, 2011), and will not reconsider that ruling at this time.

**V. CONCLUSION**

The Court concludes that genuine issues of material fact exist with respect to plaintiff's claims for breach of contract and promissory estoppel. Further, the statute of limitations and the doctrine of res judicata do not bar plaintiff's claims. Thus, the Court denies Defendants' Motion to Dismiss Plaintiff's Claim for Breach of Contract from Plaintiff's Amended Complaint, treated as a Motion for Summary Judgment.

An appropriate Order follows.